UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-cr-20051-SLD-EIL-3 |
| | ) | |
| JACOB LARRY, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

<u>ORDER</u>

Before the Court are Defendant-Petitioner Jacob Larry's *pro se* Motion Under 28 U.S.C.
§ 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Pro Se 2255
Motion"), ECF No. 98, counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255
("Counseled 2255 Motion"), ECF No. 101, and counseled motion for a status conference, ECF
No. 114.  For the reasons that follow, the 2255 motions are DENIED, and the motion for a status
conference is MOOT.

**BACKGROUND**

On July 7, 2016, a grand jury indicted Larry on one count of conspiracy to manufacture
50 grams or more of actual methamphetamine and 500 grams or more of "mixtures and
substances containing a detectable amount of methamphetamine" in violation of 21 U.S.C.
§ 841(a)(1) and (b)(1)(A), one count of using or maintaining a premises for the purpose of
manufacturing methamphetamine in violation of 21 U.S.C. § 856(a)(1), one count of
manufacturing a mixture or substance containing a detectable amount of methamphetamine in
violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and one count of distribution of a mixture or
substance containing a detectable amount of methamphetamine in violation of 21 U.S.C.
§ 841(a)(1) and (b)(1)(C).  Indictment 2, 4, 6, ECF No. 1.

1

Attorney Bruce Ratcliffe was appointed to represent Larry pursuant to the Criminal Justice Act.  July 11, 2016 Min. Entry.  United States District Judge Colin Bruce, who was then presiding over the case, ordered the United States Probation Office ("USPO") to prepare a pre-plea criminal history report.  Oct. 7, 2016 Min. Entry.  USPO estimated that Larry's total offense level would be 39 and that his criminal history category would be II.  Pre-Plea Guideline & Criminal History Report ¶¶ 33, 38, ECF No. 25.  Accordingly, it estimated that his Sentencing Guidelines range for imprisonment would be 292 to 365 months.  *Id.* ¶ 44.

On January 27, 2017, Larry entered a guilty plea to the conspiracy count against him pursuant to a written plea agreement.  Jan. 27, 2017 Min. Entry; Plea Agreement, ECF No. 33.  His plea was accepted by Judge Bruce on February 14, 2017.  Order Approving Magistrate Judge Recommendation, ECF No. 40.  Under the plea agreement, Larry waived his rights to appeal and collaterally attack his conviction and sentence (with an exception for claims of involuntariness and ineffective assistance of counsel).  Plea Agreement ¶¶ 27–28.

USPO then prepared a presentence investigation report ("PSR").  *See* PSR, ECF No. 56.  The PSR listed the same total offense level, criminal history category, and Guidelines range as the pre-plea report.  *See id.* ¶ 47 (total offense level of 39); *id.* ¶ 53 (criminal history category II); *id.* ¶ 81 (Guidelines imprisonment range of 292 months to 365 months).  It noted that Larry was subject to a ten-year mandatory minimum term of imprisonment and a five-year mandatory minimum term of supervised release pursuant to statute.  *Id.* ¶¶ 80, 84.  Larry objected to imposition of a two-level enhancement for being armed with a dangerous weapon, *see id.* ¶ 37, arguing that a pellet gun he carried did not count as a dangerous weapon.  *Id.* at 18.  He also objected to imposition of a two-level enhancement for being an organizer, leader, or manager, *see id.* ¶ 41, arguing that he only exercised control over his girlfriend.  *Id.* at 19.

At the sentencing hearing, Larry withdrew his second objection, and the Government concluded the first objection.  Statement of Reasons 5–7, ECF No. 60.  Accordingly, Judge Bruce found that Larry's total offense level was 37 and his Guidelines range for imprisonment was 235 to 293 months.  *See id.* at 1.  Judge Bruce sentenced Larry to 168 months of imprisonment based in part on the Government's motion pursuant to § 5K1.1 of the Sentencing Guidelines.  *Id.* at 2; May 22, 2027 Min Entry.  He sentenced Larry to five years of supervised release.  May 22, 2017 Min. Entry.  Judgment was entered May 24, 2017.  Judgment 1, ECF No. 58.  Larry did not appeal.

The case was reassigned to this Court after Larry filed a motion to reduce his sentence under the First Step Act.  May 14, 2019 Text Order Reassigning Case; Mot. Reduce Sentence, ECF No. 80.  The Court denied Larry's motion because he was not convicted of a covered offense; he was convicted of an offense involving methamphetamine rather than an offense involving cocaine.  *See* Aug. 1, 2019 Text Order.

In June 2020, Larry filed the Pro Se 2255 Motion.  *See* Pro Se 2255 Mot. 12.[1]  He alleges that Judge Bruce was biased against him and had an improper relationship with the Government in criminal cases and that Article III, Section 1 of the Constitution, which provides that judges "shall hold their Offices during good Behaviour," U.S. Const. art. III, § 1, was violated.  Pro Se 2255 Mot. 4.  His claims are based on *ex parte* communications between Judge Bruce and the United States Attorney's Office for the Central District of Illinois ("USAO") that came to light in 2018.  *See United States v. Atwood*, 941 F.3d 883, 884–85 (7th Cir. 2019) (providing a brief explanation of the discovery and disclosure of the communications).

---

[1] The Court uses the page numbers generated by CM/ECF because the Pro Se 2255 Motion is not consistently paginated.

The Court appointed counsel to represent Larry with respect to the Pro Se 2255 Motion. *See* June 26, 2020 Text Order.  On October 8, 2020, counsel filed the Counseled 2255 Motion, "which is intended to supplement" the Pro Se 2255 Motion.  Counseled 2255 Mot. 1.  In the Counseled 2255 Motion, Larry asserts the following claims: 1) that his "due process rights were violated because Judge Bruce was actually bias[ed] against him"; 2) that, alternatively, Judge Bruce was required to recuse himself under 28 U.S.C. § 455(a) due to an appearance of bias; and 3) that the Federal Public Defender's office ("FPD") provided him with ineffective assistance of counsel in violation of the Sixth Amendment.  *Id.* at 11–12, 22–23.

The Government filed its response on January 29, 2021.  Resp., ECF No. 111.  It argues that Larry cannot show that Judge Bruce was actually biased against him, that his "nonconstitutional appearance of bias claim is not a proper basis for relief in a § 2255 proceeding," that his "allegations should be dismissed because he waived his right to collaterally attack his sentence and conviction as part of his plea agreement," that his claims are untimely,[2] that he procedurally defaulted his § 455(a) claim, and that the ineffective assistance of counsel claims "have no merit."  *Id.* at 24–25, 47–49.

No reply was filed, though Larry later filed a motion for a status conference.

## DISCUSSION

### I.    Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct it.  28 U.S.C. § 2255(a).  "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process."  *Almonacid v. United States*, 476 F.3d 518, 521

---

[2] In its summary section, the Government identifies only the § 455(a) claim as being untimely, Resp. 25, but later it argues that all of Larry's claims are untimely, *id.* at 47–49.

(7th Cir. 2007).  Accordingly, such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

## II.    Analysis

The Court first addresses the Government's waiver and timeliness arguments as they apply to more than one of Larry's claims and then addresses each of Larry's claims and any defenses specific to those claims.

### A.  Waiver

Larry's plea agreement contains a waiver of the right to collaterally attack his conviction and sentence with limited exceptions.  *See* Plea Agreement ¶ 28.  The Government argues that Larry's due process and § 455(a) claims "are squarely within the scope of the broad collateral attack waiver" and that Larry "does not assert any recognized exception to the enforcement of the waiver."  Resp. 45.[3]

"It is well-settled that waivers of direct and collateral review in plea agreements are generally enforceable."  *Hurlow v. United States*, 726 F.3d 958, 964 (7th Cir. 2013).[4]  If a collateral review waiver is voluntary and knowing, it is generally enforceable.  *Dowell v. United States*, 694 F.3d 898, 902 (7th Cir. 2012).  "There are only limited instances when [the court] will not enforce a knowing and voluntary waiver of . . . collateral review."  *Id.*  Waivers are

---

[3] It does not address Larry's *pro se* Article III claim, so the Court does not either.
[4] The Seventh Circuit analyzes waivers of the right to appeal and to bring a collateral attack similarly.  *See, e.g.*, *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999) ("Our reasons for upholding the voluntariness requirement in the context of waivers of direct appeal rights apply with equal force to the right to bring a collateral attack pursuant to § 2255.").

unenforceable, for example, if "the district court relied on a constitutionally impermissible factor (such as race)" in determining the sentence or "the sentence exceeded the statutory maximum." *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (quotation marks omitted).  Waivers are also unenforceable "against claims that counsel was ineffective in the negotiation of the plea agreement." *Hurlow*, 726 F.3d at 964.  There are also "at least some due process exceptions to a waiver." *United States v. Adkins*, 743 F.3d 176, 192 (7th Cir. 2014).  For example, a waiver "will not prevent a defendant from challenging . . . deprivation of some minimum of civilized procedure (such as if the parties stipulated to trial by twelve orangutans)." *Id.* (quotation marks omitted).

As Larry failed to mention his waiver in either of his motions and did not file a reply, he has not argued that the waiver was not entered into voluntarily and knowingly.  In any case, the record demonstrates that it was.  Larry signed the plea agreement, Plea Agreement 16, and represented that the collateral review waiver was entered into voluntarily and knowingly, *see id.* ¶ 29 (acknowledging that he was "waiving [his rights to appeal and collaterally attack his sentence] because [he] *personally* believe[d] it [wa]s in [his] best interest to do so in order to obtain the benefit of the concessions made by the United States in this agreement"); *id.* (stating that he was not "coerced, threatened, intimidated, or in any other way involuntarily persuaded to waive [his] rights to appeal or collaterally attack [his] sentence"); *id.* ¶ 37 (stating that he had "read th[e] entire Plea Agreement carefully and . . . discussed it with fully with [his] attorney" and that he fully understood and accepted the agreement "without reservation, including the paragraphs labeled 'Waiver of Right to Appeal' and 'Waiver of Right to Collateral Attack'").

And, again, as Larry has not addressed the waiver, he has not identified any other reason for the Court not to enforce it.  The Court finds no exception recognized by the Seventh Circuit

applies.  There is no allegation that the sentence was based on a constitutionally prohibited factor like race or gender or that the sentence exceeds the statutory maximum.  *See Adkins*, 743 F.3d at 192.  And in the absence of any argument from Larry that there is a due process exception for a claim that a judge was actually biased against a defendant, *see Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) ("Due process guarantees an absence of actual bias on the part of a judge . . . ." (quotation marks omitted)), the Court is not inclined to find one exists.  Indeed, other courts have enforced waivers against judicial bias claims.  *See United States v. Carver*, 349 F. App'x 290, 292–94 (10th Cir. 2009); *Anderson v. United States*, No. CV 12-1025 MCA/WPL & CR 10-0086 MCA, 2013 WL 12164686, at *5–6 (D.N.M. Mar. 7, 2013), adopted by 2015 WL 12859352, at *3–4 (D.N.M. Aug. 17, 2015).

Accordingly, the Court finds that Larry's statutory § 455(a) claim and his due process bias claim are barred by his collateral review waiver.  Nevertheless, as explained below, the Court would deny those claims even if there were no collateral review waiver.

**B.  Timeliness**

Pursuant to the Antiterrorism and Effective Death Penalty Act, a federal prisoner seeking to vacate his sentence under § 2255 has one year to do so, from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

The Government argues that Larry's "claims are . . . untimely." Resp. 47. It argues that the motion is untimely under § 2255(f)(1) as it was filed more than a year from Larry's appeal deadline, *id.* at 47–48, and that it is untimely under § 2255(f)(4) because it was filed more than a year from the date "the exercise of due diligence would have alerted anyone that Judge Bruce engaged in *ex parte* communication with members of the USAO," *id.* at 48. Larry neither addressed the timeliness of his motion in his Counseled 2255 motion nor filed reply addressing the Government's invocation of the statute of limitations.

The Court agrees with the Government that these are the only two potentially relevant statutes of limitation and that the motion is untimely under both. Judgment was entered on Larry's conviction on May 24, 2017. Judgment 1. His conviction became final when his time to appeal passed on June 7, 2017. *See Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005) ("[A]n unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires."); Fed. R. App. P. 4(b)(1)(A)(i) (providing that a criminal defendant has fourteen days from the entry of judgment to appeal); *cf. Clay v. United States*, 537 U.S. 522, 532 (2003) (holding that a conviction becomes final when the time for seeking direct review expires). As the Pro Se 2255 Motion was not filed until June 2020, it was filed far beyond the deadline provided by § 2255(f)(1).

With respect to § 2255(f)(4), Larry's claims are based on the *ex parte* communications Judge Bruce had with the USAO, so the relevant start date for the one-year period of limitations is the date Larry could have discovered those emails through the exercise of due diligence.[5] The

---

[5] The only exception is the claim that the FPD provided ineffective assistance of counsel by failing to obtain a tolling agreement. The Government does not address the timeliness of this claim. Regardless, as will be explained, it is clearly meritless. *See infra* Section II(D).

Court, however, need not determine that date because the record demonstrates that Larry was aware of these communications in May 2019.  *See* Letter Requesting Counsel, ECF No. 81 (requesting counsel "for a possible re-sentence because of the . . . ex parte communications of" Judge Bruce).  Even if this was the first date he could have learned of those communications, the Pro Se 2255 Motion was filed too late under § 2255(f)(4) because it was not filed until June 2020, more than a year later.

As Larry does not assert that a government impediment prevented him from filing a § 2255 motion, § 2255(f)(2) does not apply, and as he does not rely on a right newly recognized by the Supreme Court, § 2255(f)(3) does not apply.  Accordingly, Larry's motion was untimely filed.  Though the Government argues that equitable tolling does not apply, *see* Resp. 49–50, the Court declines to address this as Larry does not argue for application of equitable tolling, *cf Mayberry v. Dittmann*, 904 F.3d 525, 529–30 (7th Cir. 2018) (noting that it is a petitioner's burden to establish his eligibility for equitable tolling).  Nevertheless, even if the motion were not untimely, the Court would deny all of Larry's claims.

### C.  Due Process,  § 455(a), and Article III Claims

Larry's due process, § 455(a), and Article III claims are all based on *ex parte* communications between Judge Bruce and the USAO that became public in August 2018, over a year after Larry was sentenced.  These communications have been detailed and summarized elsewhere.  *See Shannon v. United States*, 39 F.4th 868, 876, 883 (7th Cir. 2022) (citing *In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council May 14, 2019), http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-90067.pdf).  Larry argues that these communications demonstrate that Judge Bruce was actually biased against him, violating his due process rights,

and, alternatively, that they demonstrate an appearance of bias that required Judge Bruce to

recuse himself under 28 U.S.C. § 455(a).  *See* Counseled 2255 Mot. 11–12.  In his Pro Se 2255

Motion, Larry argues that Article III, Section 1 of the Constitution was violated.  Pro Se 2255

Mot. 4.

### 1.  Due Process

"Due process requires 'a fair trial in a fair tribunal, before a judge with no actual bias

against the defendant or interest in the outcome of his particular case.'"  *Shannon*, 39 F.4th at

883 (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)).  A due process claim can be

proved by evidence of the judge's actual bias or by showing that "the probability of actual bias

on the part of the judge or decisionmaker is too high to be constitutionally tolerable."  *Id.*

(quoting *Rippo v. Baker*, 580 U.S. 285, 287 (2017)).

The Seventh Circuit has decided a few cases involving due process bias claims based on

Judge Bruce's *ex parte* communications which are instructive here.  In *United States v. Williams*,

949 F.3d 1056, 1061–63 (7th Cir. 2020), the court held that Judge Bruce presiding over a

defendant's trial did not violate the defendant's due process rights where the defendant relied

primarily on the *ex parte* communications but the communications did not concern the

defendant's case.  It noted that the Special Committee appointed by the Judicial Council of the

Seventh Circuit to review complaints against Judge Bruce related to the communications "found

no evidence and received no allegation that Judge Bruce's conduct or ex parte communications

impacted any of his rulings or advantaged either party."  *Id.* at 1061–62 (quotation marks

omitted).  Moreover, the court noted that though the communications exposed a preexisting

relationship with members of the USAO, such a relationship "alone does not create a due process

violation."  *Id.* at 1062.  It found that the defendant had "presented no evidence to rebut th[e]

10

presumption" that "judges rise above . . . potential biasing influences." *Id.* (quotation marks omitted). Larry relies on the same communications that were relied on in *Williams* and considered by the Special Committee, and he points to no emails that concern his case specifically or any evidence showing that the communications impacted his case. *See* Counseled 2255 Mot. 3–15.

In *Shannon*, the Seventh Circuit found that Judge Bruce's participation in a defendant's sentencing hearing, as opposed to only his trial, may warrant a different result under the due process clause because judges have considerable discretion at sentencing. *Shannon*, 39 F.4th at 884–86. In that case, Judge Bruce made comments at sentencing that the court concluded could have been interpreted as a warning that if the defendant appealed, he would impose a harsher sentence. *Id.* at 886–87. Though it ultimately declined to rule on whether there was a due process violation, the Seventh Circuit appeared to be troubled by the combination of the *ex parte* communications and the comments. *See id.* at 884 (declining to resolve the constitutional issue and instead remanding for resentencing under the court's supervisory authority). Larry points to no similar comment at sentencing that would lend itself to a finding that Judge Bruce was biased against him. Instead, he is relying on the *ex parte* communications alone. *See* Counseled 2255 Mot. 13–15. The Court thus finds that Larry has failed to show either actual bias or a risk of bias so high that it violates due process. The due process claim is denied.

### 2. Section 455(a)

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Government does not explicitly address whether Judge Bruce's impartiality might reasonably have been questioned and, thus, whether he

11

2:16-cr-20051-SLD-EIL   # 115   Filed: 05/15/23   Page 12 of 19

should have recused himself from Larry's case under § 455(a).[6]  Instead, it argues that this statutory claim is procedurally defaulted and not cognizable on § 2255 review.  Resp. 38–43, 45–47.  The Court addresses each of these arguments.

### a.  Procedural Default

"A claim cannot be raised for the first time in a § 2255 motion *if it could have been* raised at trial or on direct appeal."  *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016) (emphasis added).  The Government argues that Larry procedurally defaulted his § 455(a) appearance of bias claim by failing to raise it on appeal.  Resp. 46–47.  Anticipating an argument that "the *ex parte* emails had not been revealed at the time, and therefore [Larry] could not have raised such a claim in an appeal," the Government argues that "the emails had nothing to do with [Larry's] case, and [Larry] cannot excuse his own procedural failure by belatedly asserting misconduct in unrelated cases to bolster a claim he chose not to make."  *Id.* at 46.  But the Government provides no case law support for its argument that Larry cannot rely on these communications, which became public after his time to appeal passed, to excuse his default.  Instead, it appears to be making an argument that the communications do not support Larry's claim.  But that is better considered as an argument on the merits.  The Court does not find that Larry procedurally defaulted this claim.

### b.  Cognizability

Even if Larry's § 455(a) claim were not untimely and barred by his collateral review waiver, it would not warrant relief.  Section 2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  *Davis v. United States*, 417 U.S. 333, 343

---

[6] To the Court's knowledge, the Government has conceded an appearance of impropriety—and thus a violation of § 455(a)—in every case involving Judge Bruce's communications that has been decided by the Seventh Circuit so far.  *See, e.g.*, *Atwood*, 941 F.3d at 885; *Williams*, 949 F.3d at 1063; *United States v. Orr*, 969 F.3d 732, 738 (7th Cir. 2020).

(1974).  Although the language of § 2255 suggests that a prisoner can obtain relief if his sentence was imposed in violation of the "laws of the United States," § 2225(a), not "every asserted error of [nonconstitutional] law can be raised on a § 2255 motion." *Davis*, 417 U.S. at 346.  The "appropriate inquiry [i]s whether the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and whether it presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Id.* (quotation marks and alterations omitted); *see also Reed v. Farley*, 512 U.S. 339, 348 (1994) (noting the standard as whether the federal law violation qualifies as "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure" (alteration in original) (quotation marks omitted)).[7]

Two circuit courts have addressed whether a § 455(a) claim is cognizable on a § 2255 motion.[8]  In *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990), the Fifth Circuit found the relevant inquiry to be "whether there was an appearance of impropriety which rose to the level of a fundamental defect resulting in a complete miscarriage of justice."  *Id.* (quotation marks omitted).  It held that "[a]bsent that level of severity, the claim of an appearance of impropriety is not cognizable under 28 U.S.C. § 2255."  *Id.*  It noted that "section 455 and the Due Process Clause are not coterminous" and that "conduct violative of section 455 may not constitute a due process deficiency."  *Id.*  And it appeared to hold that a § 455(a) claim is only cognizable where

---

[7] Although *Reed* involved a motion under 28 U.S.C. § 2254, *Reed*, 512 U.S. at 347, the Supreme Court held that the same standard that applies to determining whether a nonconstitutional federal law violation is cognizable on § 2255 review applies to § 2254 cases, *id.* at 353–54.

[8] In an unpublished opinion, the Tenth Circuit addressed a § 455 bias claim on § 2255 review because the petitioner "assert[ed] that he was unaware of the facts allegedly warranting recusal when direct review was available."  *United States v. Austin*, 48 F.3d 1233, at *1 & n.2 (10th Cir. 1995) (table opinion) (citing *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989)).  But as this case is unpublished and does not analyze this issue specifically, it is not persuasive, and the Court will not address it here.

the § 455(a) violation falls "within [a] protected constitutional dimension" where § 455 and the Due Process Clause overlap.  *Id.* at 82, 83.[9]

In *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989), the Second Circuit assumed without deciding "that as a general matter collateral attack upon a criminal sentence may be available under section 2255 to pursue a claim of appearance of impartiality."  It made this assumption based on the Supreme Court's decision in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988).  *Liljeberg* involved a motion under Federal Rule of Civil Procedure 60(b)(6) to vacate a civil judgment on the basis that the judge should have recused himself under § 455(a).  *Liljeberg*, 486 U.S. at 858, 863.  Rule 60(b)(6) allows district courts to grant relief from a final civil judgment in "extraordinary circumstances."  *Id.* at 863–64 (quotation marks omitted).  The Supreme Court held that

> in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process.

*Id.* at 864.  The Second Circuit in *Hardy* noted initially that it "doubt[ed] that an *appearance* of impropriety under section 455(a), without more, [would] constitute[] the type of 'fundamental defect' that would justify vacating an otherwise lawful sentence under section 2255."  *Hardy*, 878 F.2d at 97.  It reasoned that, after *Liljeberg*, it was "not certain" whether the Court would similarly hold that a criminal judgment may be collaterally attacked based on an appearance of

---

[9] The Fifth Circuit's precise holding as it relates to the facts of the case is not clear.  The district judge considering the defendant's § 2255 motion had resentenced the defendant "to comply with the spirit and beyond of *Liljeberg* [*v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)]."  *Couch*, 896 F.2d at 80 (quotation marks omitted).  The Fifth Circuit found that the alleged § 455(a) violation did not fall within protected constitutional dimensions warranting § 2255 relief.  *Id.* at 82, 83 ("We conclude and hold that Couch's claims of an appearance of impropriety do not rise to the level of a fundamental defect in due process cognizable under 28 U.S.C. § 2255.").  It noted that by resentencing the defendant, the district judge had accorded him "a measure of process well beyond that due on the facts of his case," but that it was "within [the judge's] power to do so."  *Id.* at 82.  The Fifth Circuit does not make explicit what gave the judge the power to resentence the defendant but seemed to hold that it was not required or warranted under § 2255.

impropriety but concluded that "the analogy [wa]s sufficiently close to warrant" the assumption that it would "for purposes of [that] appeal." *Id.* The only dispositive holding from the Second Circuit in *Hardy*, however, was that the defendant could not obtain relief under section 2255 because she was aware of the basis for the judge's recusal when direct appeal was available. *Id.* at 98.

Like in *Couch*, the Court finds that a § 455(a) claim could be cognizable on § 2255 review, but only if it meets the standard laid out in *Davis*. Under that standard, the alleged § 455(a) error must be "a fundamental defect which inherently results in a complete miscarriage of justice" and "present[] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Davis*, 417 U.S. at 346 (quotation marks omitted). Here, the alleged error does not rise to that level. As noted above, Larry has not established a due process violation and has no evidence that any of Judge Bruce's communications or relationships with the USAO impacted his proceedings or prejudiced him. *Cf. Bachner v. United States*, 517 F.2d 589, 597 (7th Cir. 1975) ("The remote and theoretical possibility that a complete miscarriage of justice might have occurred is not enough to satisfy the Davis test, when in fact no injustice has been done."); *Reed*, 512 U.S. at 350–52 (finding a state court's failure to comply with the Interstate Agreement on Detainers was not cognizable on § 2254 review where the defendant did not object and no prejudice resulted because the case "lack[ed] aggravating circumstances rendering the need for the remedy afforded by the writ of *habeas corpus* . . . apparent" (second alteration in original) (quotation marks omitted))). And any violation of § 455(a) would have no bearing on Larry's guilt or innocence. *See Hussong v. Warden*, 623 F.2d 1185, 1185, 1191 (7th Cir. 1980) (finding that a § 2254 "petitioner's incarceration in violation of section 2515 of the federal wiretap statute d[id] not meet the required 'complete miscarriage of

justice' standard required of nonconstitutional violations of federal law in order to be cognizable under the federal habeas corpus statute," noting in part that "the issues he ask[ed] [the court] to redetermine h[ad] no bearing on the basic justice of his incarceration" and that nothing in the record indicated he was not guilty (quotation marks omitted)).  Moreover, Larry was sentenced below his Guidelines range.

The Court does not find that *Liljeberg* requires a different result.  *Liljeberg* identified three factors for determining whether a civil judgment should be vacated under Rule 60(b)(6) due to extraordinary circumstances.  *See Liljeberg*, 486 U.S. at 858.  And in *Atwood*, the Seventh Circuit used those factors to determine whether a statutory recusal error was harmless on appeal. *Atwood*, 941 F.3d at 885.  The *Davis* standard for nonconstitutional errors requires more than a showing of extraordinary circumstances or that a statutory error was not harmless.  It is a "well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).  Even if the Court found that the error was not harmless under those factors, that would not suffice to meet the *Davis* standard.  *See* Brian R. Means, Federal Habeas Manual § 1:38 (May 2022 Update) (noting that the *Davis* "standard is more onerous . . . than the harmless error test applied to non-constitutional claims raised on direct appeal"); *United States v. Addonizio*, 442 U.S. 178, 184 (1979) ("It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."). "There is a difference between reversing an error on appeal and correcting the error years later."  *Hawkins v. United States*, 706 F.3d 820, 824 (7th Cir. 2013).

Larry has not shown that any violation of § 455(a) was a fundamental defect resulting in a complete miscarriage of justice. His § 455(a) claim, therefore, does not warrant relief under § 2255.

### 3.  Article III, Section 1

Larry argues that Article III, Section 1 of the Constitution, which provides that judges "shall hold their Offices during good Behaviour," U.S. Const. art. III, § 1, was violated by Judge Bruce presiding over his case. *See* Pro Se 2255 Mot. 4. The Government does not respond to this argument. Nevertheless, courts have held that private individuals have no ability to enforce this clause. *See, e.g.*, *Smith v. Scalia*, 44 F. Supp. 3d 28, 43 (D.D.C. 2014) (holding that impeachment initiated by Congress is the only enforcement mechanism for this clause and citing cases), *aff'd*, No. 14-5180, 2015 WL 13710107 (D.C. Cir. Jan. 14, 2015); *LeVay v. Morken*, 598 F. Supp. 3d 655, 662 (E.D. Mich. 2022) (same). Larry points to no case law to suggest that he may seek to enforce this clause through a motion under 28 U.S.C. § 2255. This claim is denied.

### D.  Ineffective Assistance of Counsel Claims

Larry asserts that the FPD "provided him ineffective assistance of counsel" in violation of the Sixth Amendment in two ways. *See* Counseled 2255 Mot. 22–23. First, he argues that the FPD "was ineffective for failing to include claims [based on Judge Bruce's *ex parte* communications] in direct appeals once the full scope of the . . . communications was revealed." *Id.* at 23. And second, he argues that the FPD was ineffective for failing to include him in a tolling agreement for actual bias claims and for failing to secure an agreement for appearance of bias claims. *Id.* at 23.

With respect to Larry's first claim, the Government points out that the FPD did not represent him during the relevant time period, so it cannot have provided him with ineffective assistance of counsel.  Resp. 50.  The Court agrees.  Larry was represented by a private attorney appointed pursuant to the Criminal Justice Act, so the FPD cannot have been ineffective for failing to raise a claim in Larry's appeal.  (Even if Larry meant to allege that his own counsel was ineffective for failure to raise a bias or appearance of bias claim on appeal, his time to appeal passed over a year before the *ex parte* communications came to light.  His counsel was not ineffective for failing to raise a claim based on facts of which he was not be aware.)

With respect to the second claim, the Government notes that the though the FPD was briefly appointed to represent Larry with respect to a First Step Act motion, it moved to withdraw before the Court ruled on the motion and it was not appointed again.  *Id.* at 52.  Moreover, it notes that Larry was "not entitled to counsel in a post-conviction proceeding, and he was not prohibited from filing his motion before or after the FPD[']s representation."  *Id.*  The last point is dispositive.  Larry had no right to counsel beyond his direct appeal.  *See Coleman v. Thompson*, 501 U.S. 722, 756 (1991) ("[A] criminal defendant has no right to counsel beyond his first appeal . . . .");  *cf. Garza v. Idaho*, 139 S. Ct. 738, 749 (2019) ("There is no right to counsel in postconviction proceedings . . . ." (citation omitted)).  Any deficient performance with respect to securing postconviction tolling agreements does not create a Sixth Amendment violation.

## III.    Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a certificate of appealability.  Rule 11(a), Rules Governing § 2255 Proceedings.  A court can grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Larry has failed to make a substantial

showing of the denial of a constitutional right, so the Court declines to issue a certificate of appealability.

## CONCLUSION

Accordingly, Defendant-Petitioner Jacob Larry's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 98, and counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 101, are DENIED. His counseled motion for a status conference, ECF No. 114, is MOOT in light of this Order. The Clerk is directed to enter judgment and close the accompanying civil case, No. 2:20-cv-02179-SLD.

Entered this 15th day of May, 2023.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE